UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY DAWAYNE LEE TURNER,<br><br>Plaintiff,<br><br>v.<br><br>SABRY GHALY, et al.,<br><br>Defendants. | Case No. 20-cv-02791-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 14, 28-30, 32 |

## I.   INTRODUCTION

In this *pro se* prisoner's civil rights action, Anthony Dawayne Lee Turner complains about prison officials' response to his medical problems. The remaining Defendants, Dr. Ghaly and Nurse Paley, now move for summary judgment. Mr. Turner opposes the motion. For the reasons discussed below, Defendants' motion for summary judgment will be granted and judgment entered in their favor.

## II.   BACKGROUND

Mr. Turner alleges the following about treatment related to his swollen right leg: After Mr. Turner was diagnosed with a blood clot and returned from a hospital to San Quentin State Prison, Dr. Ghaly ordered blood thinner pills and said he would put a red flag in Mr. Turner's chart to note that Mr. Turner was allergic to "amoldopine." Docket No. 5-2 ("First Amended Complaint") at 27. Dr. Ghaly and Nurse Paley failed to move Mr. Turner to a lower bunk and lower tier. *Id*. at 27-28. Mr. Turner did not receive treatment "for the pain in [his] leg, no ointment for [his] dry skin and infection sores, and no medication for pain or not draining the fluid out of [his] knee and leg." *Id*. at 28-29. These events occurred at San Quentin State Prison ("San Quentin"). *See id.*

A.  California's Framework for Administrative Appeals

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates with the following administrative remedies, also referred to as the administrative grievance process.[1] CDCR provided its inmates the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety or welfare." 15 Cal. Code Regs. § 3084.1(a). Grievance issues are separated into two categories: custody issues and healthcare issues.

To grieve a healthcare issue, a prisoner must submit a CDCR Form 602 HC and "explain the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon [his] health and welfare for which [he sought] administrative remedy." 15 Cal. Code Regs. §§ 3999.226, 3999.277(a). The prisoner must state all facts known and available to him regarding the healthcare issue being grieved at the time of submission; and must identify all staff member(s) involved. 15 Cal. Code Regs. § 3999.226(g). Healthcare grievances are subject to two levels of review: an institutional level of review and a headquarters level of review. 15 Cal. Code Regs. § 3999.226(a)(1). A review at the headquarters level exhausts the prisoner's administrative remedies for the healthcare grievance. 15 Cal. Code Regs. §§ 3087.5(h), 3999.230 (2019).

B.  Mr. Turner's Administrative Grievances

Mr. Turner filed three grievances regarding healthcare while at San Quentin. *See* Docket No. 14-1 ("Woodson Declaration") ¶¶ 10-14 (describing grievances), Docket No. 14-2 ("Exhibit A") (listing grievances).

Mr. Turner filed his first healthcare grievance on September 11, 2019 ("First Grievance"). *See* Docket No. 14-3 ("Exhibit B") at 6. Mr. Turner received an institutional-level response on

---

[1] The regulations that set out the features of the administrative grievance process for custody grievances for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, 15 Cal. Code Regs. §§ 3084-3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. Because the alleged incidents took place prior to June 1, 2020, the current administrative grievance process does not apply to Mr. Turner's claims. All the citations in this order to the California regulations are to the regulations in place during the relevant period, rather than to the current regulations.

1  November 18, 2019. *See id*. at 2. Mr. Turner did not appeal his First Grievance to the
2  headquarters level. *See* Ex. A (showing the First Grievance was not appealed beyond the
3  institutional level).

4      Mr. Turner filed his second healthcare grievance on November 23, 2019 ("Second
5  Grievance"). *See* Docket No. 14-4 ("Exhibit C") at 6. Mr. Turner received an institutional-level
6  response on April 11, 2020, *see id*. at 8, and appealed to the headquarters level on April 24, 2020,
7  *see id*. at 5. Mr. Turner received a headquarters-level response to his Second Grievance on July
8  21, 2020. *See id*. at 2.

9      Mr. Turner filed his third healthcare grievance on April 8, 2020 ("Third Grievance"). *See*
10 Docket No. 14-5 ("Exhibit D") at 4. Mr. Turner received an institutional-level response on
11 August 11, 2020. *See id*. at 2. Mr. Turner did not appeal his Third Grievance to the headquarters
12 level.[2] *See* Ex. A (showing the Third Grievance was not appealed beyond the institutional level).

13 C.    Procedural Background

14     Mr. Turner filed the instant civil rights action on April 16, 2020. *See* Docket No. 1 at 3;
15 *see also Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (announcing the prison mailbox rule). Mr.
16 Turner complained that he was improperly placed in an upper tier and upper bunk, *see* Docket No.
17 1 at 2, and that he was not given proper medical treatment for his leg, *see id*. at 3. The Court
18 dismissed Mr. Turner's complaint with leave to amend. *See* Docket No. 3.

19     Mr. Turner filed a First Amended Complaint. *See* Docket No. 5 ("First Amended
20 Complaint"). The Court screened the First Amended Complaint pursuant to 28 U.S.C. § 1915A,
21 found that Mr. Turner had stated a cognizable Eighth Amendment against Dr. Ghaly and Nurse
22 Paley, and ordered these Defendants to respond to that claim. *See* Docket No. 6.

23         **III.**    **VENUE AND JURISDICTION**

24     Venue is proper in the Northern District of California because some of the events or
25 omissions giving rise to the complaint occurred at a prison in Marin County, which is located

---

[2] In the MSJ, Defendants state that Mr. Turner received a headquarters-level response to the Third Grievance on August 11, 2020. *See* MSJ at 3, 6. This is incorrect. The record shows that Mr. Turner received an institutional-level response to the Third Grievance on August 11, 2020, *see* Ex. D at 2, and that he did not appeal the Third Grievance to the headquarters level, *see* Ex. A.

3

within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

When a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is

4

something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* If material facts are disputed, summary judgment should be denied, and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170-71.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id.* at 631.

## V. DISCUSSION

Defendants argue that Mr. Turner failed to identify Dr. Ghaly and Nurse Paley as wrongdoers in any grievance, and that in any event none of Mr. Turner's three grievances was properly exhausted prior to the filing of the instant lawsuit. *See generally*, Docket No. 14 ("MSJ"). The Court agrees with the second argument, and so need not examine the first.

A.   Mr. Turner was Required to Exhaust His Administrative Remedies Before Filing Suit

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses

judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).

B.  The First and Third Grievances were not Exhausted

The record reveals that Mr. Turner appealed neither his First nor his Third Grievances to the headquarters level. *See* Exs. B, D; *see also supra* II.B. In both instances, he received an institutional-level response which informed him that if he was "dissatisfied with the Institutional Level Response," he could "submit the entire health care grievance package for headquarters' level review," given instructions on how to do so, and told that "[t]he headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies." Ex. B at 3, Ex. D at 3. Mr. Turner thus was expressly informed that the institutional-level response did not exhaust his administrative remedies, yet still failed to appeal to the headquarters level.

The PLRA requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion," in turn, "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted).

Here, Mr. Turner was expressly informed of the steps he needed to take in order properly to exhaust the First and Third Grievances, and he failed to take those steps. He does not provide any explanation for this failure. *See generally*, Docket No. 17 ("Opposition"). Accordingly, the Court concludes that Mr. Turner failed properly to exhaust his claim in the First and Third Grievances.

C.  The Second Grievance was not Exhausted Prior to this Suit Being Filed

The record reveals that Mr. Turner did not appeal his Second Grievance to the headquarters level until April 24, 2020, and received a headquarters-level response to his Second

6

1    Grievance on July 21, 2020.  *See* Ex. C at 2, 5; *see also supra* II.B.  However, Mr. Turner filed the

2    instant civil rights action on April 16, 2020.  *See* Docket No. 1 at 3; *see also Houston*, 487 U.S. at

3    270-71 (1988).  Mr. Turner thus waited until *after* he filed the instant lawsuit to attempt to exhaust

4    the Second Grievance.  This is impermissible; the law is clear that "a prisoner must exhaust his

5    administrative remedies for the claims contained within his complaint *before* that complaint is

6    tendered to the district court."  *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010)

7    (emphasis added).

8          Mr. Turner appears to argue that headquarters delayed responding to the Second Grievance

9    beyond the permitted time.  *See* Docket No. 28. at 3 (filing by Mr. Turner, styled "Motion for

10   Renewal for Exhaustion and Merits of his Claims").[3]  Even if this is true,[4] it does not change the

11   fact that Mr. Turner did not even appeal the Second Grievance to the headquarters level until more

12   than one week after the instant action was filed.  *Compare* Docket No. 1 at 3 *with* Ex. C at 5; *see*

13   *also supra* II.B.  The Second Grievance thus had not been exhausted when Mr. Turner filed the

14   instant action.  *Cf. Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001) (holding

15   that prisoner who never received a response to his first-level grievance failed to satisfy exhaustion

16   requirement because time period for prison response had not expired before he filed suit).

17         Because Mr. Turner did not receive, or even seek, a headquarters-level response to the

18   Second Grievance before filing suit, he failed to exhaust that grievance before the instant lawsuit

19   was filed.

20   D.    Amendment would be Futile

21         The Court will not permit Mr. Turner merely to amend his pleading at this time, because

22   amendment would be futile.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

23   1041 (9th Cir. 2011) ("[A] district court may dismiss without leave [to amend] where . . .

---

[3] Defendants moved to strike this motion.  *See* Docket No. 30.  Because the motion does not help Mr. Turner's case in any event, Defendants' motion to strike is denied.

[4] The relevant regulation requires a headquarters-level response "within 60 business days" of the date a health care grievance appeal is received.  Cal. Code Regs. tit. 15, § 3999.230(f).  Even if headquarters received Mr. Turner's appeal the same day that it was sent, its response appears to have been timely because sixty business days from April 24, 2020, was July 21, 2020, the date headquarters issued its response.

United States District Court
Northern District of California

1  amendment would be futile.").[5]

2        Because Mr. Turner filed his claims before fully exhausting his administrative remedies in
3  the Second Grievance, an amended complaint would not cure the failure to exhaust. *See*
4  *McKinney*, 311 F.3d at 1199 (an action is subject to dismissal if the plaintiff exhausts while the
5  action is pending, rather than before filing suit); *Vaden*, 449 F.3d at 1051 (same). As noted above,
6  "'a suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed;
7  the district court lacks discretion to resolve the claim on the merits, *even if* the prisoner exhausts
8  intra-prison remedies before judgment.'" *McKinney*, 311 F.3d at 1200 (emphases added) (quoting
9  *Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 535 (7th Cir.1999)). The Court therefore cannot allow
10 Mr. Turner to amend his claim.

11       Although Mr. Turner will not be permitted to amend in this action, dismissal of this action
12 will be without prejudice. For Mr. Turner's benefit, the Court explains that this means Mr. Turner
13 may file an entirely new action to pursue the currently unexhausted claim, rather than filing an
14 amended complaint in the instant action. The Court recognizes that this step may "occasion the
15 expenditure of additional resources on the part of" Mr. Turner. *McKinney*, 311 F.3d at 1200.
16 Nevertheless, the Ninth Circuit has expressly held that courts are required to dismiss in this
17 situation, even though a litigant may be inconvenienced. *See id*. (stating that Congress has "made
18 a policy judgment that" the parties' inconvenience is "outweighed by the advantages of requiring
19 exhaustion prior to the filing of suit").

20       **VI.**    **<u>PLAINTIFF'S MOTIONS</u>**

21     Mr. Turner filed several motions, which the Court now terminates or denies as appropriate.
22     First, Mr. Turner's "Motion for Renewal for Exhaustion and Merits of his Claims," which
23 the Court addressed above, is more properly considered a sur-reply. *See* Docket No. 28. The

---

[5] *See also Bobadilla v. Lizarraga*, 834 F. App'x 376, 377 (9th Cir. 2021) (affirming dismissal of prisoner's complaint at screening without leave to amend because amendment would have been futile); *Williams*, 840 F. App'x at 213 ("We conclude amendment would have been futile because it would not cure Williams' failure to exhaust available administrative remedies."); *Mahone v. Morgan*, 135 F. App'x 930, 931 (9th Cir. 2005) ("The district court did not abuse its discretion in denying Mahone leave to amend his complaint because the claim he sought to include had not been administratively exhausted, so amendment would have been futile.").

1  Clerk shall terminate this mislabeled motion.

2  Second, Mr. Turner filed a "Motion for Reconsideration for Appointment of Counsel."
3  Docket No. 29. With this motion, Mr. Turner appears to seek reconsideration of the Court's
4  earlier order denying his request for counsel. *See* Docket No. 27. This motion is **DENIED** first
5  because Mr. Turner provides no reason why the Court should revisit its earlier determination that
6  counsel is not warranted, and second because this entire action fails due to Mr. Turner's
7  nonexhaustion, and so his request for counsel is moot.

8  Third, Mr. Turner filed a "Motion to Reply." Docket No. 32. Although far from clear, Mr.
9  Turner appears to want Defendants to file an Answer to the First Amended Complaint. *See id*.
10 Defendants filed a dispositive motion in lieu of an Answer, and Mr. Turner's case fails because
11 Mr. Turner failed to exhaust his administrative remedies before filing suit. This motion therefore
12 is **DENIED** as moot.

### VII.     CONCLUSION

14 For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.**
15 Docket No. 14. Defendants are entitled to judgment as a matter of law in their favor on the
16 affirmative defense of nonexhaustion of administrative remedies.

17 However, judgment is without prejudice to plaintiff filing a new action raising his Eighth
18 Amendment claim, once that claim is properly exhausted.

19 This order disposes of Docket Nos. 14, 28-30, and 32. The Clerk shall enter judgment and
20 close the file.

21 The Court certifies that any appeal of this order is not taken in good faith. *See* 28 U.S.C.
22 § 1915(a)(3).

24 **IT IS SO ORDERED**.

26 Dated: March 21, 2022

_____
EDWARD M. CHEN
United States District Judge

9